**RYLEY CARLOCK & APPLEWHITE**
One North Central Avenue, Suite 1200
Phoenix, Arizona 85004-4417
Telephone: 602/258-7701
Telecopier: 602/257-9582

William Scott Jenkins, Jr. – 021841
sjenkins@rcalaw.com
Alexandra E. Hicks – 026269
ahicks@rcalaw.com

Attorneys for Wells Fargo Bank, N.A. as trustee
for the registered holders of LaSalle
Commercial Mortgage Securities, Inc. 2006-
MF2, Commercial Mortgage Pass-Through
Certificates, Series 2006-MF2

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>Petru Pop and Maria Pop,<br><br>Debtors. | Chapter 11 Proceedings<br><br>Case No. 2:09-bk-33666-SSC<br><br>**MOTION TO APPOINT TRUSTEE** |

Pursuant to §§ 1104(a)(1) and 1112(b) of the Bankruptcy Code, Wells Fargo Bank, N.A. as trustee for the registered holders of LaSalle Commercial Mortgage Securities, Inc. 2006-MF2, Commercial Mortgage Pass-Through Certificates, Series 2006-MF2 (the "Trust") moves to convert the case to Chapter 7 or to appoint a trustee under Chapter 11 as follows:

"Cause" exists under § 1104(a)(1) to appoint a trustee in this case, including the Debtors' fraud, dishonesty, incompetence, and gross mismanagement of the affairs of the estate, both before and after the commencement of the case. Additionally, even when no "cause" exists for appointing a Chapter 11 trustee under § 1104(a)(1), a court may appoint a trustee "if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor . . ." 11 U.S.C. § 1104(a)(2).

The Debtors have been collecting rents from approximately sixteen tenants living in the apartment complex located at 5915-5947 West Rose Lane, Glendale, Arizona 85304

("Property") since filing for bankruptcy protection. The Trust has a lien on the rents under a MultiFamily Deed of Trust, Assignment of Rents, and Security Agreement (the "Deed of Trust"), recorded on December 5, 2005, at Recorder's No. 20051831575, records of Maricopa County, Arizona, and a UCC Financing Statement filed with the Arizona State Secretary of State at File No. 200915835215, relating to the Property. (*See*, Exhibit "A"). The Debtors are not using the rents to pay their debts to the Trust or to fund tenant improvements. The Trust filed a Notice of Non-Consent to Use of Cash Collateral on January 14, 2010, but according to Debtors' testimony at the 341 Meeting of Creditors, the Debtor is continuing to use the rents to pay the operating expenses for the Property.

The Trust believes that if a Trustee is not appointed to manage the estate, its security interests will not be protected or managed in accordance with the provisions of the Bankruptcy Code. The Trust believes that the Debtors have already mismanaged approximately a month of cash collateral in which the Trust had a secured interest.

**WHEREFORE**, the Trust requests that the Court appoint a trustee under either 7 or 11.

DATED this 17th day of February, 2010.

**RYLEY CARLOCK & APPLEWHITE**


By /s/ Alexandra E. Hicks
    William Scott Jenkins, Jr.
    Alexandra E. Hicks
    Attorneys for Wells Fargo Bank, N.A. as trustee
    for the registered holders of LaSalle
    Commercial Mortgage Securities, Inc. 2006-
    MF2, Commercial Mortgage Pass-Through
    Certificates, Series 2006-MF2

1  A copy of the foregoing was electronically filed with
   the U.S. Bankruptcy Court on this 17th day of
2  February, 2010.

3  A copy of the foregoing was mailed this 17th day of
   February, 2010, to:
4
   Office of the U.S. Trustee
5  U.S. Bankruptcy Court
   230 North First Avenue, Suite 204
6  Phoenix, Arizona 85003

7  Joseph W. Charles
   P.O. Box 1737
8  Glendale, Arizona 85311-1737
   Attorney for Debtors
9
   By: /s/ Joyce Gesick
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

WHEN RECORDED MAIL TO

Loan #: 8704384

197150-15-2-2--
Kelleyc

LaSalle Bank National Association
1350 E Touhy Avenue, Suite 280W
Des Plaines, IL 60018

Attn: Connie Ryan

FIRST AMERICAN TITLE
*NCS - 197150-CHI1*  2/2

SPACE ABOVE THIS LINE FOR RECORDER'S USE

This instrument was prepared by:
Paloma Navarrete, LaSalle Bank National Association
1350 East Touhy Avenue, Suite 280W
Des Plaines, IL 60018

## MULTIFAMILY DEED OF TRUST
## ASSIGNMENT OF RENTS AND SECURITY AGREEMENT

THIS DEED OF TRUST (herein "Instrument") is made  December 2, 2005 between the Trustor/Grantor, **Petru Pop, an unmarried man,** whose address is 11821 N. 61st Dr., Glendale, AZ  85304 (herein "Borrower"), First American Title Insurance whose address is 30 North LaSalle Street, Suite 310, Chicago, IL 60018 (herein "Trustee"), and the Beneficiary, LaSalle Bank National Association, whose address is 1350 East Touhy Avenue 280W Des Plaines, IL 60018 (herein "Lender").

WHEREAS, Borrower is indebted to Lender in the principal sum of SEVEN HUNDRED FIFTY THOUSAND AND 00/100,  ($750,000.00) Dollars,   which indebtedness is evidenced by Borrower's note dated December 2, 2005 providing for monthly installments of principal and interest, with the balance of the indebtedness, if not sooner paid, due and payable on January 1, 2036;

TO SECURE TO LENDER (a) the repayment of the indebtedness evidenced by the Note, with interest thereon, and all renewals, extensions and modifications thereof; (b) the repayment of any future advances, with interest thereon, made by Lender to Borrower pursuant to paragraph 30 hereof (herein "Future Advances"); (c) the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Instrument; and (d) the performance of Borrower's covenants and agreements under this Security Instrument and the Note.  For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in Maricopa County, Arizona:

Legal Description:  See Exhibit "A"

TOGETHER with all buildings, improvements, and tenements now or hereafter erected on the property, and all heretofore or hereafter vacated alleys and streets abutting the property, and all easements, rights, appurtenances, rents, royalties, mineral, oil and gas rights and profits, water, water rights, and water stock appurtenant to the property, and all fixtures, machinery, equipment, engines, boilers, incinerators, building materials, appliances and goods of every nature whatsoever now or hereafter located in, or on, or used, or intended to be used in connection with the property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light; and all elevators, and related machinery and equipment, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, mirrors, cabinets, paneling, rugs, attached floor coverings, furniture, pictures , antennas, trees and plants, and all other personal property necessary for the operation of the real estate; all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the real property covered by this Instrument; and all of the foregoing, together with said property (or the leasehold estate in the event this Instrument is on a leasehold) are herein referred to as the "Property".

Borrower covenants that Borrower is lawfully seized of the estate hereby conveyed and has the right to deed of trust, grant, convey and assign the Property (and, if this Instrument is on a leasehold, that the ground lease is in full force and effect without modification except as noted above and without default on the part of either lessor or lessee thereunder), that the Property is unencumbered, and that Borrower will warrant and defend generally the title tot he Property against all claims and demands, subject to any easements and restrictions listed in a schedule of exceptions to coverage in any title insurance policy insuring Lender's interest in the Property.

**Uniform Covenants.** Borrower and Lender covenant and agree as follows:

1. PAYMENT OF PRINCIPAL AND INTEREST. Borrower shall promptly pay when due the principal of and interest on the indebtedness evidenced by the Note, and prepayment and late charges provided in the Note and all other sums secured by this Instrument.

2. FUNDS FOR TAXES, INSURANCE AND OTHER CHARGES. Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly installments of principal or interest are payable under the Note (or on another day designated in writing by Lender), until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of (a) the yearly water and sewer rates and taxes and assessments which may be levied on the Property, (b) the yearly ground rents, if any, (c) the yearly premium installments for fire and other hazard insurance, rent loss insurance and such other insurance covering the Property as Lender may require pursuant to paragraph 5 hereof, (d) the yearly premium installments for deed of trust insurance, if any, and (e) if this Instrument is on a leasehold, the yearly fixed rents, if any, under the ground lease, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Any waiver by Lender of a requirement that Borrower pay such Funds may be revoked by Lender, in Lender's sole discretion, at any time upon notice in writing to Borrower. Lender may require Borrower to pay to Lender, in advance, such other Funds for other taxes, charges, premiums, assessments and impositions in connection with Borrower or the Property which Lender shall reasonably deem necessary to protect Lender's interests (herein "Other Impositions"). Unless otherwise provided by applicable law, Lender may require Funds for Other Impositions to be paid by Borrower in a lump sum or in periodic installments, at Lender's option.

The Funds shall be held in an institution(s) the deposits or accounts of which are insured or guaranteed by a Federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said rates, rents, taxes, assessments, insurance premiums and Other Impositions so long as Borrower is not in breach of any covenant or agreement of Borrower in this Instrument. Lender shall make no charge for so holding and applying the Funds, analyzing said account or for verifying and compiling said assessments and bills, unless Lender pays Borrower interest, earnings or profits on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Instrument that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires interest, earnings or profits to be paid, Lender shall not be required to pay Borrower any interest, earnings or profits on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds in Lender's normal format showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Instrument.

If the amount of the Funds held by Lender at the time of the annual accounting thereof shall exceed the amount deemed necessary by Lender to provide for the payment of water and sewer rates, taxes, assessments, insurance premiums, rents and Other Impositions, as they fall due, such excess shall be credited to Borrower on the next monthly installment or installments of Funds due. If at any time the amount of the Funds held by Lender shall be less than the amount deemed necessary by Lender to pay water and sewer rates, taxes, assessments, insurance premiums, rents and Other Impositions, as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency within thirty days after notice from Lender to Borrower requesting payment thereof.

Upon Borrower's breach of any covenant or agreement of Borrower in this Instrument, Lender may apply, in any amount and in any order as Lender shall determine in Lender's sole discretion, any Funds held by Lender at the time of application (i) to pay rates, rents, taxes, assessments, insurance premiums and Other Impositions which are now or will hereafter become due, or (ii) as a credit against sums secured by this Instrument. Upon payment in full of all sums secured by this Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

3. APPLICATION OF PAYMENTS. Unless applicable law provides otherwise, all payments received by Lender from Borrower under the Note or this Instrument shall be applied by Lender in the following order of priority: (i) amounts payable to Lender by Borrower under paragraph 2 hereof; (ii) interest payable on the Note; (iii) principal of the Note; (iv) interest payable on advances made pursuant to paragraph 8 hereof; (v) principal of advances made pursuant to paragraph 8 hereof; (vi) interest payable on any Future Advance, provided that if more than one Future Advance is outstanding, Lender may apply payments received among the

amounts of interest payable on the Future Advances in such order as Lender, in Lender's sole discretion, may determine; (vii) principal of any Future Advance, provided that if more than one Future Advance is outstanding, Lender may apply payments received among the principal balances of the Future Advances in such order as Lender, in Lender's sole discretion, may determine; and (viii) any other sums secured by this Instrument in such order as Lender, at Lender's option may determine; provided, however, that Lender may, at Lender's option, apply any sums payable pursuant to paragraph 8 hereof prior to interest on and principal of the Note, but such application shall not otherwise affect the order of priority of application specified in this paragraph 3.

4. CHARGES; NO ADDITIONAL DEBT; NO LIENS. Borrower shall pay all water and sewer rates, rents, taxes, assessments, premiums, and Other Impositions attributable to the Property at Lender's option in the manner provided under paragraph 2 hereof or, if not paid in such manner, by Borrower making payment, when due, directly to the payee thereof, or in such other manner as Lender may designate in writing. Borrower shall promptly furnish to Lender receipts evidencing such payments. Borrower shall promptly discharge any lien which has, or may have, priority over or equality with, the lien of this Instrument, and Borrower shall pay, when due, the claims of all persons supplying labor or materials to or in connection with the Property. Without Lender's prior written permission, Borrower shall not allow any lien inferior to this Instrument to be perfected against the Property.

Without Lender's prior written permission, Borrower shall not allow any lien (other than the liens granted to Lender by this Deed of Trust) to be perfected against the Property and shall not otherwise execute any mortgage, security agreement, assignment of leases and rents or other agreement granting a lien (other than the liens granted to Lender by this Deed of Trust) with respect to the Property. Borrower shall be in default and breach under this Mortgage if Borrower is in default with respect to any debt other than the indebtedness under the Note and such default is declared and is not cured within the time provided in any agreement governing that debt.

5. HAZARD INSURANCE. Borrower shall keep the improvements now existing or hereafter erected on the Property insured by carriers at all times satisfactory to Lender against loss by fire, hazards included within the term "extended coverage", rent loss and such other hazards, casualties, liabilities and contingencies as Lender (and, if this Instrument is on a leasehold, the ground lease) shall require and in such amounts and for such periods as Lender shall require. All premiums on insurance policies shall be paid, at Lender's option, in the manner provided under paragraph 2 hereof, or by Borrower making payment, when due, directly to the carrier, or in such other manner as Lender may designate in writing.

All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard deed of trust clause in favor of and in form acceptable to Lender. Lender shall have the right to hold the policies, and Borrower shall promptly furnish to Lender all renewal notices and all receipts of paid premiums. At least thirty days prior to the expiration date of a policy, Borrower shall deliver to Lender a renewal policy in form satisfactory to Lender. If this Instrument is on a leasehold, Borrower shall furnish Lender a duplicate of all policies, renewal notices, renewal policies and receipts of paid premiums if, by virtue of the ground lease, the originals thereof may not be supplied by Borrower to Lender.

In the event of loss, Borrower shall give immediate written notice to the insurance carrier and to Lender. Borrower hereby authorizes and empowers Lender as attorney-in-fact for Borrower to make proof of loss, to adjust and compromise any claim under insurance policies, to appear in and prosecute any action arising from such insurance policies, to collect and receive insurance proceeds, and to deduct therefrom Lender's expenses incurred in the collection of such proceeds; provided however, that nothing contained in this paragraph 5 shall require Lender to incur any expense or take any action hereunder. Borrower further authorizes Lender, at Lender's option, (a) to hold the balance of such proceeds to be used to reimburse Borrower for the cost of reconstruction or repair of the Property or (b) to apply the balance of such proceeds to the payment of the sums secured by this Instrument, whether or not then due, in the order of application set forth in paragraph 3 hereof (subject, however, to the rights of the lessor under the ground lease if this Instrument is on a leasehold).

If the insurance proceeds are held by Lender to reimburse Borrower for the cost of restoration and repair of the Property, the Property shall be restored to the equivalent of its original condition or such other condition as Lender may approve in writing. Lender may, at Lender's option, condition disbursement of said proceeds on Lender's approval of such plans and specifications of an architect satisfactory to Lender, contractor's cost estimates, architect's certificates, waivers of liens, sworn statements of mechanics and materialmen and such other evidence of costs, percentage completion of construction, application of payments, and satisfaction of liens as Lender may reasonably require. If the insurance proceeds are applied to the payment of the sums secured by this Instrument, any such application of proceeds to principal shall not exceed or postpone the due dates of the monthly installments referred to in paragraphs 1 and 2 hereof or change the amounts of such installments. If the Property is sold pursuant to paragraph 27 hereof or if Lender acquires title to the Property, Lender shall have all of the right, title and interest of Borrower in and to any insurance policies and unearned premiums thereon and in and to the proceeds resulting from any damage to the Property prior to such sale or acquisition.

6. PRESERVATION AND MAINTENANCE OF PROPERTY; LEASEHOLDS. Borrower (a) shall not commit waste or permit impairment or deterioration of the Property, (b) shall not abandon the Property, (c) shall restore or repair promptly and in a good and workmanlike manner all or any part of the Property to the equivalent of its original condition, or such other condition as Lender may approve in writing, in the event of any damage, injury or loss thereto, whether or not insurance proceeds are available to cover in whole or in part the costs of such restoration or repair, (d) shall keep the Property, including improvements, fixtures, equipment, machinery and appliances thereon in good repair and shall replace fixtures, equipment, machinery and appliances on the Property when necessary to keep such items in good repair, (e) shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property, (f) upon written demand by Lender shall provide for professional management of the Property by a residential rental property manager satisfactory to Lender pursuant to a contract approved by Lender in writing, (g) shall generally operate and maintain the Property in a manner to ensure maximum rentals, and (h) shall give notice in writing to Lender of and, unless otherwise directed in writing by Lender, appear in and defend any action or proceeding purporting to affect the Property, the security of this Instrument or the rights of powers of Lender. Neither Borrower nor any tenant or other person shall remove, demolish or alter any improvement now existing or hereafter erected on the Property or any fixture, equipment, machinery or appliance in or on the Property except when incident to the replacement of fixtures, equipment, machinery and appliances with items of like kind.

If this Instrument is on a leasehold, Borrower (i) shall comply with the provisions of the ground lease, (ii) shall give immediate written notice to Lender of any default by lessor under the ground lease or of any notice received by Borrower from such lessor of any default under the ground lease by Borrower, (iii) shall exercise any option to renew or extend the ground lease and give written confirmation thereof to Lender within thirty days after such option becomes exercisable, (iv) shall give immediate written notice to Lender of the commencement of any remedial proceedings under the ground lease by any party thereto and, if required by Lender, shall permit Lender as Borrower's attorney-in-fact to control and act for Borrower in any such remedial proceedings and (v) shall within thirty days after request by Lender obtain from the lessor under the ground lease and deliver to Lender the lessor's estoppel certificate required thereunder, if any. Borrower hereby expressly transfers and assigns to Lender the benefit of all covenants contained in the ground lease, whether or not such covenants run with the land, but Lender shall have no liability with respect to such covenants nor any other covenants contained in the ground lease.

Borrower shall not surrender the leasehold estate and interests herein conveyed nor terminate or cancel the ground lease creating said estate and interests, and Borrower shall not, without the express written consent of Lender, alter or amend said ground lease. Borrower covenants and agrees that there shall not be a merger of the ground lease, or of the leasehold estate created thereby, with the fee estate covered by the ground lease by reason of said leasehold estate or said fee estate, or any part of either, coming into common ownership, unless Lender shall consent in writing to such merger, if Borrower shall acquire such fee estate, then this Instrument shall simultaneously and without further action be spread so as to become a lien on such fee estate.

7. USE OF PROPERTY. Unless required by applicable law or unless Lender has otherwise agreed in writing, Borrower shall not allow changes in the use for which all or any part of the Property was intended at the time this Instrument was executed. Borrower shall not initiate or acquiesce in a change in the zoning classification of the Property without Lender's prior written consent.

8. PROTECTION OF LENDER'S SECURITY. If Borrower fails to perform the covenants and agreements contained in this Instrument, or if any action or proceeding is commenced which affects the Property or title thereto or the interest of Lender therein, including, but not limited to, eminent domain, insolvency, code enforcement, or arrangements or proceedings involving a bankrupt or decedent, then Lender at Lender's option may make such appearances, disburse such sums and take such action as Lender deems necessary, in its sole discretion, to protect Lender's interest, including, but not limited to, (i) disbursement of attorney's fees, (ii) entry upon the Property to make repairs, (iii) procurement of satisfactory insurance as provided in paragraph 5 hereof, and (iv) if this Instrument is on a leasehold, exercise of any option to renew or extend the ground lease on behalf of Borrower and the curing of any default of Borrower in the terms and conditions of the ground lease.

Any amounts disbursed by Lender pursuant to this paragraph 8, with interest thereon, shall become additional indebtedness of Borrower secured by this Instrument. Unless Borrower and Lender agree to other terms of payment, such amounts shall be immediately due and payable and shall bear interest from the date of disbursement at the rate stated in the Note unless collection from Borrower of interest at such rate would be contrary to applicable law, in which event such amounts shall bear interest at the highest rate which may be collected from Borrower under applicable law. Borrower hereby covenants and agrees that Lender shall be subrogated to the lien of any deed of trust or other lien discharged, in whole or in part, by the indebtedness secured hereby. Nothing contained in this paragraph 8 shall require Lender to incur any expense or take any action hereunder.

9. INSPECTION. Lender may make or cause to be made reasonable entries upon and inspections of the Property.

10. BOOKS AND RECORDS. Borrower shall keep and maintain at all times at Borrower's address stated below, or such other place as Lender may approve in writing, complete and accurate books of accounts and records adequate to reflect correctly the results of the operation of the Property and copies of all written contracts, leases and other instruments which affect the Property. Such books, records, contracts, leases and other instruments shall be subject to examination and inspection at any reasonable time by Lender. Upon Lender's request, Borrower shall furnish to Lender, within thirty days after the end of each fiscal year of Borrower, a balance sheet, a statement of income and expenses of the Property and a statement of changes in financial position, each in reasonable detail and certified by Borrower and if, Lender shall require, by an independent certified public accountant. Borrower shall furnish, together with the foregoing financial statements and at any other time upon Lender's request, a rent schedule for the Property, certified by Borrower, showing the name of each tenant, and for each tenant, the space occupied, the lease expiration date, the rent payable and the rent paid. If Borrower fails to timely furnish Lender with any of the financial information and reports set forth in this paragraph within the required time periods, Lender shall be entitled to receive a late charge equal to $500.00 for each financial information and/or report not so furnished to Lender (the "Financial Late Charge"). The Financial Late Charge shall be due and payable by Borrower immediately upon receipt by Borrower of an invoice for same from Lender.

11. CONDEMNATION. Borrower shall promptly notify Lender of any action or proceeding relating to any condemnation or other taking, whether direct or indirect, of the Property, or part thereof, and Borrower shall appear in and prosecute any such action or proceeding unless otherwise directed by Lender in writing. Borrower authorizes Lender, at Lender's option, as attorney-in-fact for Borrower, to commence, appear in and prosecute, in Lender's or Borrower's name, any action or proceeding relating to any condemnation or other taking. The proceeds of any award, payment or claim for damages, direct or consequential, in connection with any condemnation or other taking, whether direct or indirect, of the Property, or part thereof, or for conveyances in lieu of condemnation, are hereby assigned to and shall be paid to Lender subject, if this Instrument is on a leasehold, to the rights of lessor under the ground lease.

Borrower authorizes Lender to apply such awards, payments, proceeds or damages, after the deduction of Lender's expenses incurred in the collection of such amounts, at Lender's option, to restoration or repair of the Property or to payment of the sums secured by this Instrument, whether or not then due, in the order of application set forth in paragraph 3 hereof, with the balance, if any, to Borrower. Unless Borrower and Lender otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly installments referred to in paragraphs 1 and 2 hereof or change the amount of such installments. Borrower agrees to execute such further evidence of assignment of any awards, proceeds, damages or claims arising in connection with such condemnation or taking as Lender may require.

12. BORROWER AND LIEN NOT RELEASED. From time to time, Lender may, at Lender's option, without giving notice to or obtaining the consent of Borrower, Borrower's successors or assigns of any junior lienholder or guarantors, without liability on Lender's part and notwithstanding Borrower's breach of any covenant or agreement of Borrower in this Instrument, extend the time for payment of said indebtedness or any part thereof, reduce the payments thereon, release anyone liable on any of said indebtedness, accept a renewal note or notes therefor, modify the terms and time of payment of said indebtedness, release from the lien of this Instrument any part of the Property, take or release other or additional security, reconvey any part of the Property, consent to any map or plan of the Property, consent to the granting of any easement, join in any extension or subordination agreement, and agree in writing with Borrower to modify the rate of interest or period of amortization of the Not or change the amount of the monthly installments payable thereunder. Any actions taken by Lender pursuant to the terms of this paragraph 12 shall not affect the obligation of Borrower or Borrower's successors or assigns to pay the sums secured by this Instrument and to observe the covenants of Borrower contained herein, shall not affect the guaranty of any person, corporation, partnership or other entity for payment of the indebtedness secured hereby, and shall not affect the lien or priority of lien hereof on the Property. Borrower shall pay Lender a reasonable service charge, together with such title insurance premiums and attorney's fees as may be incurred at Lender's option, for any such action if taken at Borrower's request.

13. FORBEARANCE BY LENDER NOT A WAIVER. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any right or remedy. The acceptance by Lender of payment of any sum secured by this Instrument after the due date of such payment shall not be a waiver of Lender's right to either require prompt payment when due of all other sums so secured or to declare a default for failure to make prompt payment. The procurement of insurance or the payment of taxes or other liens or charges by Lender shall not be a waiver of Lender's right to accelerate the maturity of the indebtedness secured by this Instrument, nor shall Lender's receipt of any awards, proceeds or damages under paragraphs 5 and 11 hereof operate to cure or waive Borrower's default in payment of sums secured by this Instrument.

14. ESTOPPEL CERTIFICATE. Borrower shall within ten days of a written request from Lender furnish Lender with a written statement, duly acknowledged, setting forth the sums secured by this Instrument and any right of set-off, counterclaim or other defense which exists against such sums and the obligations of this Instrument.

15. UNIFORM COMMERCIAL CODE SECURITY AGREEMENT. This Instrument is intended to be a security agreement pursuant to the Uniform Commercial Code for any of the items specified above as part of the Property which, under applicable law, may be subject to a security interest pursuant to the Uniform Commercial Code, and Borrower hereby grants Lender a security interest in said items. Borrower agrees that Lender may file this Instrument, or a reproduction thereof, in the real estate records or other appropriate index, as a financing statement for any of the items specified above as part of the Property. Any reproduction of this Instrument or of any other security agreement or financing statement shall be sufficient as a financing statement. In addition, Borrower agrees to execute and deliver to Lender, upon Lender's request, any financing statements, as well as extensions, renewals and amendments thereof, and reproduction of this Instrument in such form as Lender may require to perfect a security interest with respect to said items. Borrower shall pay all costs of filing such financing statements and any extensions, renewals, amendments and releases thereof, and shall pay all reasonable costs and expenses of any record searches for financing statements Lender may reasonably require. Without the prior written consent of Lender, Borrower shall not create or suffer to be created pursuant to the Uniform Commercial Code any other security interest in said items, including replacements and additions thereto. Upon Borrower's breach of any covenant or agreement of Borrower contained in this Instrument, including the covenants to pay when due all sums secured by this Instrument, Lender shall have the remedies of a secured party under the Uniform Commercial Code and, at Lender's option, may also invoke the remedies provided in paragraph 27 of this Instrument as to such items. In exercising any of said remedies, Lender may proceed against the items of real property and any items of personal property specified above as part of the Property separately or together and in any order whatsoever, without in any way affecting the availability of Lender's remedies under the Uniform Commercial Code or of the remedies provided in paragraph 27 of this Instrument.

16. LEASES OF THE PROPERTY. As used in this paragraph 16, the word "lease" shall mean "sublease" if this Instrument is on a leasehold. Borrower shall comply with and observe Borrower's obligations as landlord under all leases of the Property or any part thereof. Borrower will not lease any portion of the Property for non-residential use except with the prior written approval of Lender. Borrower, at Lender's request, shall furnish Lender with executed copies of all leases now existing or hereafter made of all or any part of the Property, and all leases now or hereafter entered into will be in form and substance subject to the approval of Lender. All leases of the Property shall specifically provide that such leases are subordinate to this Instrument; that the tenant attorns to Lender, such attornment to be effective upon Lender's acquisition of title to the Property; that the tenant agrees to execute such further evidences of attornment as Lender may from time to time request; that the attornment of the tenant shall not be terminated by foreclosure; and that Lender may, at Lender's option, accept or reject such attornments. Borrower shall not, without Lender's written consent, execute, modify, surrender or terminate, either orally or in writing, any lease now existing or hereafter made of all or any part of the Property providing for a term of three years or more, permit an assignment or sublease of such a lease without Lender's written consent, or request or consent to the subordination of any lease of all or any part of the Property to any lien subordinate to this Instrument. If Borrower becomes aware that any tenant proposes to do, or is doing, any act or thing which may give rise to any right of set-off against rent, Borrower shall (i) take such steps as shall be reasonably calculated to prevent the accrual of any right to a set-off against rent, (ii) notify Lender thereof and of the amount of said set-offs, and (iii) within ten days after such accrual, reimburse the tenant who shall have acquired such right to set-off or take such other steps as shall effectively discharge such set-off and as shall assure that rents thereafter due shall continue to be payable without set-off or deduction.

Upon Lender's request, Borrower shall assign to Lender, by written instrument satisfactory to Lender, all leases now existing or hereafter made of all or any part of the Property and all security deposits made by tenants in connection with such leases of the Property. Upon assignment by Borrower to Lender of any leases of the Property, Lender shall have all of the rights and powers possessed by Borrower prior to such assignment and Lender shall have the right to modify, extend or terminate such existing leases and to execute new leases, in Lender's sole discretion.

17. REMEDIES CUMULATIVE. Each remedy provided in this Instrument is distinct and cumulative to all other rights or remedies under this Instrument or afforded by law or equity, and may be exercised concurrently, independently, or successively, in any order whatsoever.

18. ACCELERATION IN CASE OF BORROWER'S INSOLVENCY. If Borrower shall voluntarily file a petition under the Federal Bankruptcy Act, as such Act may from time to time be amended, or under any similar or successor Federal statute relating to bankruptcy, insolvency, arrangements or reorganizations, or under any state bankruptcy or insolvency act, or file an answer in an involuntary proceeding admitting insolvency or inability to pay debts, or if Borrower shall fail to obtain a vacation or stay of involuntary proceedings brought for the reorganization, dissolution or liquidation of Borrower, or if Borrower shall be adjudged a bankrupt, or if a trustee or receiver shall be appointed for Borrower or Borrower's property, or if the Property shall become subject

to the jurisdiction of a Federal bankruptcy court or similar state court, or if Borrower shall make an assignment for the benefit of Borrower's creditors, or if there is an attachment, execution or other judicial seizure of any portion of Borrower's assets and such seizure is not discharged within ten days, the Lender may, at Lender's option, declare all of the sums secured by this Instrument to be immediately due and payable without prior notice to Borrower, and Lender may invoke any remedies permitted by paragraph 27 of this Instrument. Any attorney's fees and other expenses incurred by Lender in connection with Borrower's bankruptcy or any of the other aforesaid events shall be additional indebtedness of Borrower secured by this Instrument pursuant to paragraph 8 hereof.

## 19. TRANSFERS OF THE PROPERTY OR BENEFICIAL INTERESTS IN BORROWER; ASSUMPTION.

(a)      The occurrence of any of the following events shall constitute an Event of Default under this Instrument:

      (1)      a Transfer of all or any part of the Mortgaged Property or any interest in the Mortgaged Property;

      (2)      a Transfer of a Controlling Interest in Borrower;

      (3)      a Transfer of a Controlling Interest in any entity which owns, directly or indirectly through one or more intermediate entities, a Controlling Interest in Borrower;

      (4)      a Transfer of all or any part of "Guarantor's" (as defined in that certain Limited Guaranty of Payment in favor of Lender dated as of the date hereof) ownership interests (other than limited partnership interests) in Borrower, or in any other entity which owns, directly or indirectly through one or more intermediate entities, an ownership interest in Borrower;

      (5)      intentionally deleted;

      (6)      if Borrower is a trust, the termination or revocation of such trust; and

      (7)      a conversion of Borrower from one type of legal entity into another type of legal entity, whether or not there is a Transfer.

Lender shall not be required to demonstrate any actual impairment of its security or any increased risk of default in order to exercise any of its remedies with respect to an Event of Default under this Section 21.

(b)      The occurrence of any of the following events shall not constitute an Event of Default under this Instrument, notwithstanding any provision of Section 21(a) to the contrary:

      (1)      a Transfer to which Lender has consented;

      (2)      a Transfer that occurs by devise, descent, or by operation of law upon the death of a natural person;

      (3)      the grant of a leasehold interest in an individual dwelling unit for a term of two years or less not containing an option to purchase;

      (4)      a Transfer of obsolete or worn out personalty or fixtures that are contemporaneously replaced by items of equal or better function and quality, which are free of liens, encumbrances and security interests other than those created by the Loan Documents or consented to by Lender;

      (5)      the grant of an easement, if before the grant Lender determines that the easement will not materially affect the operation or value of the Mortgaged Property or Lender's interest in the Mortgaged Property, and Borrower pays to Lender, upon demand, all costs and expenses incurred by Lender in connection with reviewing Borrower's request; and

      (6)      the creation of a tax lien or a mechanic's, materialman's or judgment lien against the Mortgaged Property which is bonded off, released of record or otherwise remedied to Lender's satisfaction within 30 days of the date of creation.

(c)     Lender shall consent, without any adjustment to the rate at which the Indebtedness secured by this Instrument bears interest or to any other economic terms of the Indebtedness, to a Transfer that would otherwise violate this Section 21 if, prior to the Transfer, Borrower has satisfied each of the following requirements:

(1)     the submission to Lender of all information required by Lender to make the determination required by this Section 21(c);

(2)     the absence of any Event of Default;

(3)     the transferee meets all of the eligibility, credit, management and other standards (including any standards with respect to previous relationships between Lender and the transferee and the organization of the transferee) customarily applied by Lender at the time of the proposed Transfer to the approval of borrowers in connection with the origination or purchase of similar mortgages, deeds of trust or deeds to secure debt on multifamily properties;

(4)     the Mortgaged Property, at the time of the proposed Transfer, meets all standards as to its physical condition that are customarily applied by Lender at the time of the proposed Transfer to the approval of properties in connection with the origination or purchase of similar mortgages on multifamily properties;

(5)     if Lender's original appraisal of the Mortgaged Property will be older than one year at the time of the closing of the proposed Transfer, then Lender shall have obtained a new appraisal of the Mortgaged Property at borrower's expense.

(6)     if one or more holdbacks(s) were required at time of closing of the Loan, all conditions to release of the holdbacks(s) must have been completed to Lender's satisfaction and, without limiting the foregoing, Lender will have the right to obtain a new Property Condition Assessment report at borrower's expense to assist in verification of such completion;

(7)     in the case of a Transfer of all or any part of the Mortgaged Property, or direct or indirect ownership interests in Borrower, if transferor or any other person has obligations under any Loan Document, the execution by the transferee or one or more individuals or entities acceptable to Lender of an assumption agreement (including, if applicable, an Acknowledgement and Agreement of Guarantor to Personal Liability for Exceptions to Non-Recourse Liability) that is acceptable to Lender and that, among other things, requires the transferee to perform all obligations of transferor or such person set forth in such Loan Document, and may require that the transferee comply with any provisions of this Instrument or any other Loan Document which previously may have been waived by Lender;

(8)     the Borrower causes one or more individuals or entities acceptable to Lender to execute and deliver to Lender a guaranty in a form acceptable to Lender; and

(9)     Lender's receipt of all of the following:

(A)     payment of an amount equal to the sum of (1) a non-refundable review fee (the "Review Fee") of (a) $10,000.00 if the proposed Transfer occurs during the first year of the loan, or (b) $5,000.00 if the proposed Transfer occurs after the first year of the loan and (2) a transfer fee equal to one percent (1%) of the outstanding Indebtedness immediately prior to the Transfer.

(B)     In addition, Borrower shall be required to reimburse Lender for all of Lender's out-of-pocket costs (including reasonable attorneys' fees) incurred in reviewing the Transfer request, to the extent such expenses exceed the Review Fee.

(d)     For purposes of this Section, the following terms shall have the meanings set forth below:

(1)     **"Initial Owners"** means, with respect to Borrower or any other entity, the persons or entities who on the date of the Note own in the aggregate 100% of the ownership interests in Borrower or that entity.

(2)     A Transfer of a **"Controlling Interest"** shall mean, with respect to any entity, the following:

    (i)    if such entity is a limited liability partnership, or a joint venture, a Transfer of any general partnership interest or joint venture interest which would cause the Initial Owners to own less than 25% of all general partnership or joint venture interests in such entity;

    (ii)    if such entity is a general partnership, limited partnership or a limited liability limited partnership, a Transfer of any general partnership interest;

    (iii)    if such entity is a limited liability company, a Transfer of any managing member interest or any membership or other ownership interest which would cause the Initial Owners to own less than 25% of all membership or other ownership interests in such entity;

    (iv)    if such entity is a corporation (other than a Publicly-Held Corporation) with only one class of voting stock, a Transfer of any voting stock which would cause the Initial Owners to own less than 25% of voting stock in such corporation;

    (v)    if such entity is a corporation (other than a Publicly-Held Corporation) with more than one class of voting stock, a Transfer of any voting stock which would cause the Initial Owners to own less than a sufficient number of shares of voting stock having the power to elect the majority of directors of such corporation; and

    (vi)    if such entity is a trust, the removal, appointment or substitution of a trustee of such trust other than (A) in the case of a land trust, or (B) if the trustee of such trust after such removal, appointment or substitution is a trustee identified in the trust agreement approved by Lender.

    (3)    **"Publicly-Held Corporation"** shall mean a corporation the outstanding voting stock of which is registered under Section 12(b) or 12(g) of the Securities and Exchange Act of 1934, as amended.

20. NOTICE. Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Instrument or in the Note shall be given by mailing such notice by certified mail addressed to Borrower at Borrower's address stated below or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail, return receipt requested, to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Instrument or in the Note shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

21. SUCCESSORS AND ASSIGNS BOUND; JOINT AND SEVERAL LIABILITY; AGENTS; CAPTIONS. The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 19 hereof. All covenants and agreements of Borrower shall be joint and several. In exercising any rights hereunder or taking any actions provided for herein, Lender may act through its employees, agents or independent contractors as authorized by Lender. The captions and headings of the paragraphs of this Instrument are for convenience only and are not to be used to interpret or define the provisions hereof.

22. UNIFORM MULTIFAMILY INSTRUMENT; GOVERNING LAW; SEVERABILITY. This form of multifamily instrument combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property and related fixtures and personal property. This Instrument shall be governed by the law of the jurisdiction in which the Property is located. In the event that any provision of this Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Instrument or the Note which can be given effect without the conflicting provisions, and to this end the provisions of this Instrument and the Note are declared to be severable. In the event that any applicable law limiting the amount of interest or other charges permitted to be collected from Borrower is interpreted so that any charge provided for in this Instrument or in the Note, whether considered separately or together with other charges levied in connection with this Instrument and the Note, violates such law, and Borrower is entitled to the benefit of such law, such charge is hereby reduced to the extent necessary to eliminate such violation. The amounts, if any, previously paid to Lender in excess of the amounts payable to Lender pursuant to such charges as reduced shall be applied by Lender to reduce the principal of the indebtedness evidenced by the Note. For the purpose of determining whether any applicable law limiting the amount of interest or other charges permitted to be collected from Borrower has been violated, all indebtedness which is secured by this Instrument or evidenced by the Note and which constitutes interest, as well as all other charges levied in connection with such indebtedness which

constitute interest, shall be deemed to be allocated and spread over the stated term of the Note. Unless otherwise required by applicable law, such allocation and spreading shall be effected in such a manner that the rate of interest computed thereby is uniform throughout the stated term of the Note.

23. WAIVER OF STATUTE OF LIMITATIONS. Borrower hereby waives the right to assert any statute of limitations as a bar to the enforcement of the lien of this Instrument or to any action brought to enforce the Note or any other obligation secured by this Instrument.

24. WAIVER OF MARSHALLING. Notwithstanding the existence of any other security interests in the Property held by Lender or by any other party, Lender shall have the right to determine the order in which any or all of the Property shall be subjected to the remedies provided herein. Lender shall have the right to determine the order in which any or all portions of the indebtedness secured hereby are satisfied from the proceeds realized upon the exercise of the remedies provided herein. Borrower, any party who consents to this Instrument and any party who now or hereafter acquires a security interest in the Property and who has actual or constructive notice hereof hereby waives any and all right to require the marshalling of assets in connection with the exercise of any of the remedies permitted by applicable law or provided herein.

25. ASSIGNMENT OF RENT; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION. As part of the consideration for the indebtedness evidenced by the Note, Borrower hereby absolutely and unconditionally assigns and transfers to Lender all the rents and revenues of the Property, including those now due, past due, or to become due by virtue of any lease or other agreement for occupancy or use of all or any part of the Property, regardless of to whom the rents and revenues of the Property are payable. Borrower hereby authorizes Lender or Lender's agents to collect the aforesaid rents and revenues and hereby directs each tenant of the Property to pay such rents to Lender or Lender's agents; provided, however, that prior to written notice given by Lender to Borrower of the breach by Borrower of any covenant or agreement of Borrower in this Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower, to apply the rents and revenues so collected to the sums secured by this Instrument in the order provided in paragraph 3 hereof with the balance, so long as no such breach has occurred, to the account of the Borrower, it being intended by Borrower and Lender that this assignment of rents constitutes an absolute assignment and not an assignment for additional security only. Upon delivery of written notice by Lender to Borrower of the breach by Borrower of any covenant or agreement of Borrower in this Instrument, and without the necessity of Lender entering upon and taking and maintaining full control for the Property in person, by agent or by a court-appointed receiver, Lender shall immediately be entitled to possession of all rents and revenues of the Property as specified in this paragraph 25 as the same become due and payable, including but not limited to rents then due and unpaid, and all such rents shall immediately upon delivery of such written notice of Borrower's breach by Lender to Borrower, each tenant of the Property shall make such rents payable to and pay such rents to Lender or Lender's agents on Lender's written demand to each tenant therefor, delivered to each tenant personally, by mail or by delivering such demand to each rental unit, without any liability on the part of said tenant to inquire further as to the existence of a default by Borrower.

Borrower hereby covenants that Borrower has not executed any prior assignment of said rents, that Borrower has not performed, and will not perform, any acts or has not executed, and will not execute, any instrument which would prevent Lender from exercising its rights under this paragraph 25, and that at the time of execution of this Instrument there has been no anticipation or prepayment of any of the rents of the Property for more than two months prior to the due date of such rents. Borrower covenants that Borrower will not hereafter collect or accept payment of any rents of the Property more than two months prior to the due dates of such rents. Borrower further covenants that Borrower will exercise and deliver to Lender such further assignments of rents and revenues of the Property as Lender may from time to time request.

Upon Borrower's breach of any covenant or agreement of Borrower in this Instrument, Lender may in person, by agent or by a court-appointed receiver, regardless of the adequacy of Lender's security, enter upon and take and maintain full control of the Property in order to perform all acts necessary and appropriate for the operation and maintenance thereof including, but not limited to, the execution, cancellation or modification of leases, the collection of all rents and revenues of the Property, the making of repairs to the Property and the execution or termination of contracts providing for the management or maintenance of the Property, all on such terms as are deemed best to protect the security of this Instrument. In the event Lender elects to seek the appointment of a receiver for the Property upon Borrower's breach of any covenant or agreement of Borrower in this Instrument, Borrower hereby expressly consents to the appointment of such receiver. Lender or the receiver shall be entitled to receive a reasonable fee for so managing the Property.

All rents and revenues collected subsequent to delivery of written notice by Lender to Borrower of the breach by Borrower of any covenant or agreement of Borrower in this Instrument shall be applied first to the costs, if any, of taking control of and managing the Property and collecting the rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's

bonds, costs of repairs to the Property, premiums on insurance policies, taxes, assessments and other charges on the Property, and the costs of discharging any obligation or liability of Borrower as lessor or landlord of the Property and then to the sums secured by this Instrument. Lender or the receiver shall have access to the books and records used in the operation and maintenance of the Property and shall be liable to account only for those rents actually received. Lender shall not be liable to Borrower, anyone claiming under or through Borrower or anyone having an interest in the Property by reason of anything done or left undone by Lender under this paragraph 25.

If the rents of the Property are not sufficient to meet the costs, if any, of taking control of and managing the Property and collecting the rents, any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by this Instrument pursuant to paragraph 8 hereof. Unless Lender and Borrower agree in writing to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof and shall bear interest from the date of disbursement at the rate stated in the Note unless payment of interest at such rate would be contrary to applicable law, in which event such amounts shall bear interest at the highest rate which may be collected by Borrower under applicable law.

Any entering upon and taking and maintaining of control of the Property by Lender or the receiver and any application of rents as provided herein shall not cure or waiver any default hereunder or invalidate any other right or remedy of Lender under applicable law or provided herein. This assignment of rents of the Property shall terminate at such time as this Instrument ceases to secure indebtedness held by Lender.

**Non-Uniform Covenants.** Borrower and Lender further covenant and agree as follows:

26. UTILITIES. The property is served by public utilities, water and sewer (or septic facilities) and services in the surrounding community, including police and fire protection, public transportation, refuse removal, public education, and enforcement of safety codes, all of which are adequate in relation to the improvements and location on which the Property is located (taking into account the Permitted Use of the Property.)

27. ACCELERATION; REMEDIES. Upon Borrower's breach of any covenant or agreement of Borrower in this Instrument, or in any other loan agreements or financing arrangements now existing or hereafter entered into between Borrower and Lender, the Note, [the Guaranty of Payment executed by Petru Pop, , , , , in favor of Lender dated on or about the date hereof] and the other agreements and documents executed by Borrower in favor of lender in connection with the Note (the "Loan Documents") including, but not limited to, the covenants to pay when due any sums secured by this Instrument, Lender at Lender's option may declare all of the sums secured by this Instrument to be immediately due and payable without further demand and may invoke the power of sale and any other remedies permitted by applicable law or provided herein. Borrower acknowledges that the power of sale herein granted may be exercised by lender without prior judicial hearing to the extent permitted by applicable law. Lender shall be entitled to collect all costs and expenses incurred in pursuing such remedies, including, but not limited to, attorney's fees, costs of documentary evidence, abstracts and title reports. Borrower acknowledges that this Mortgage is granted to Lender with a power of sale to the extent permitted by applicable law.

If Lender invokes the power of sale, Lender shall give notice of sale in the manner provided by the laws of ARIZONA to Borrower and to such other persons as the laws of ARIZONA prescribe, and shall sell the property according to the laws of ARIZONA. Lender may sell the Property in one or more parcels and in such order as Lender may determine. Lender may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or Lender's designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Lender's deed conveying the Property so sold without any covenant or warranty, expressed or implied. The recitals in Lender's deed shall be prima facie evidence of the truth of the statements made therein. The proceeds of the sale shall be applied in the following order; (a) to all costs and expenses of the sale, including, but not limited to, attorney's fees and costs of title evidence; (b) to all sums secured by this Instrument in such order as Lender, in Lender's sole discretion, directs, and (c) the excess, if any, to the clerk of the Circuit Court, of the county in which the sale is held.

28. RELEASE. Upon payment of all sums secured by this Instrument, Lender shall release this Instrument. Borrower shall pay Lender's reasonable costs incurred in releasing this Instrument.

29. WAIVER OF HOMESTEAD AND REDEMPTION. Borrower hereby waives all right of homestead exemption in the Property. Borrower hereby waives all right of redemption on behalf of Borrower and on behalf of all other persons acquiring any interest or title in the Property subsequent to the date of this Instrument, except decree or judgment creditors of Borrower.

30. FUTURE ADVANCES. Upon request of Borrower, Lender, at Lender's option so long as this Instrument secures indebtedness held by Lender, may make Future Advances to Borrower. Such Future Advances, with interest thereon, shall be secured by this Instrument when evidenced by promissory notes stating that said notes are secured hereby. At no time shall the principal amount of the indebtedness secured by this Instrument, not including sums advanced in accordance herewith to protect the security of this Instrument, exceed the original amount of the Note US ($750,000.00) plus the additional sum of US $ -0-.

31. SUBSTITUTE TRUSTEE. Lender at Lender's option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the city or county in which this Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon the Trustee herein and applicable law.

32. The Borrower represents and agrees that the proceeds of the Note secured by this Mortgage will be used for business purposes and that the principal obligation secured hereby constitutes a business loan.

33. ANTI-MONEY LAUNDERING/PATRIOT ACT. Borrower represents and covenants that it is not and will not become a person (individually, a "Prohibited Person" and collectively "Prohibited Persons") listed on the Specially Designated Nationals and Blocked Persons List maintained by the Office of Foreign Asset Control, U.S. Department of the Treasury (the "OFAC List") or otherwise subject to any other prohibitions or restriction imposed by laws, rules, regulations or executive orders, including Executive Order No. 13224, administered by OFAC (collectively the "OFAC Rules"). Borrower represents and covenants that it also (i) is not and will not become owned or controlled by a Prohibited Person, (ii) is not acting and will not act for or on behalf of a Prohibited Person, (iii) is not otherwise associated with and will not become associated with a Prohibited Person, (iv) is not providing and will not provide any material, financial or technological support for or financial or other service to or in support of acts of terrorism or a Prohibited Person. Borrower will not transfer any interest in Borrower to or enter into a Lease with a Prohibited Person. Borrower shall immediately notify Lender if Borrower has knowledge that any Guarantor or any member or beneficial owner of Borrower or any Guarantor is or becomes a Prohibited Person or (A) is indicted on or (B) arraigned and held over on charges involving money laundering or predicate crimes to money laundering. Borrower will not enter into any Lease or any other transaction or undertake any activities related to the Loan in violation of the federal Bank Secrecy Act, as amended ("BSA"), 31 U.S.C. §5311, et seq. or any federal or state laws, rules, regulations or executive orders, including, but not limited to, 18 U.S.C. §§1956, 1957 and 1960, prohibiting money laundering and terrorist financing (collectively "Anti-Money Laundering Laws"). Borrower shall (a) not use or permit the use of any proceeds of the Loan in any way that will violate either the OFAC Rules or Anti-Money Laundering Laws, (b) comply and cause all of its subsidiaries to comply with applicable OFAC Rules and Anti-Money Laundering Laws, (c) provide information as Lender may require from time to time to permit Lender to satisfy its obligations under the OFAC Rules and/or the Anti-Money Laundering Laws and (d) not engage in or conspire to engage in any transaction that evades or avoids, or has the purpose of evading or avoiding, or attempts to violate, any of the foregoing. Borrower shall immediately notify Lender if any Tenant becomes a Prohibited Person or (A) is convicted of, (B) pleads nolo contendere to, (C) is indicted on, or (D) is arraigned and held over on charges involving money laundering or predicate crimes to money laundering.
Customer Identification – USA Patriot Act Notice. Lender hereby notifies Borrower that pursuant to the requirements of the USA Patriot Act (Title III of Pub. L. 107-56, signed into law October 26, 2001), as amended (the "Act"), and Lender's policies and practices, Lender is required to obtain, verify and record certain information and documentation that identifies Borrower, which information includes the name and address of Borrower and such other information that will allow Lender to identify Borrower in accordance with the Act.

NOTICE: Your conversation(s) with LaSalle Bank may be recorded. You recognize that both you and LaSalle Bank may be afforded protection or benefits by the recording of such conversations, and you acknowledge, authorize and consent to the recording of such conversations by means of electronic telephone recording equipment, whether such conversations occur between you and any agent of LaSalle Bank or any of LaSalle Bank's Affiliates. You understand that LaSalle Bank or any of its Affiliates may, in their sole and absolute discretion, record conversations in connection with this Agreement without further notice or disclosure, without the use of an automatic tone warning device, and without assuming responsibility to make or retain such recordings, It is further agreed that such recording may be used as evidence by LaSalle Bank or any of its Affiliates in any disputes between LaSalle Bank or any of its Affiliates and you, subject to proper authentication.

All words used in this agreement will be construed to be of such gender or entity or number as the circumstances require.

IN WITNESS WHEREOF, Borrower has executed this Instrument or has caused the same to be executed by its representatives thereunto duly authorized.

_____

Petru Pop

Property Address:
5915-5947 W Rose Lane
Glendale, AZ 85304

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF ARIZONA, _____ County ss:

I, _____, a Notary Public in and for said county and state, do hereby certify that Petru Pop, an unmarried man, personally known to me to be the same person(s) whose name(s) is subscribed to the foregoing instrument, appeared before me this day in person, and acknowledged that he signed and delivered the said instrument as his free and voluntary act, for the uses and purposes therein set forth.

Given under my hand and official seal, this _____ day of _____ 2005

My Commission Expires:

Notary Public _____

OFFICIAL SEAL
BRUCE GUIN
NOTARY PUBLIC - State of Arizona
MARICOPA COUNTY
My Comm. Expires Feb. 4, 2006

**Exhibit "A"**

Legal Description:

THE SOUTH 112.7 FEET OF LOT 8, BLOCK 10, OF ORCHARD ADDITION TO GLENDALE, ACCORDING TO THE PLAT OF RECORD IN THE OFFICE OF THE COUNTY RECORDER OF MARICOPA COUNTY, ARIZONA, RECORDED ON BOOK 3 OF MAPS, PAGE 30. EXCEPT THE EAST 170 FEET

Property Address: 5915-5947 W Rose Lane, Glendale, AZ 85304
P.I.# 144-18-039-4, 144-18-040C 2, 144-18-040D1, 144-18-040E 1, 144-18-040 F 0, 144-18-040G 9

8704384

## ADJUSTABLE RATE RIDER

THIS ADJUSTABLE RIDER is made this December 2, 2005, and is incorporated into and shall be deemed to amend and supplement the Multifamily Mortgage (the "Security Instrument") of the same date given by the undersigned (the "BORROWER") to secure Borrower's Adjustable Rate Note (the "NOTE") to LaSalle Bank National Association (the "LENDER") of the same date and covering the property described in the Security Instrument and located at:

5915-5947 W Rose Lane, Glendale, AZ 85304

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. IF THE INTEREST RATE INCREASES, THE BORROWER'S MONTHLY PAYMENTS WILL INCREASE. IF THE INTEREST RATE DECREASES, THE BORROWER'S MONTHLY PAYMENT WILL DECREASE.

The provisions contained in the Note concerning per annum interest rate and monthly payment changes are as follows:

The initial rate of interest due and payable hereunder shall be 6.630% percent per annum. The interest rate is subject to change, however, beginning on the 1st day of January, 2011 and on the first day of the month that is every six (6) months thereafter (the "Change Dates") subject to the limitations set forth herein. The per annum Rate Of Interest shall be changed on each "Change Date" to a "Rate Of Interest" which equals the "Current Index Rate" plus two and one half percent (2.5%). The interest rate will equal the Current Index Rate plus our margin rounded up to the nearest 1/8 percent unless your interest rate "Caps" as set forth below limit the amount of change in the interest rate. The Current Index Rate shall be the most recent "Index Rate" available as of 45 days prior to a Change Date provided that if such day is not a business day, the LIBOR published on the immediately preceding business day will be used. The Index Rate shall be the six (6) month London Interbank Offering Rate (LIBOR), as published in the Wall Street Journal. If the Index Rate is not longer available, the holder of the Note will choose a new index which is based upon comparable information as determined by Lender in its sole discretion. Written notice of the note holder's choice of a new index shall be sent to the undersigned.

Changes to the per annum rate of interest, as described above, shall be subject to the following limitations: a) The interest rate on the first Change Date shall not be increased by more than five percent (5.0%) from the interest rate which was in effect immediately prior to such Change Date; b) The interest rate on the second Change Date and every Change Date thereafter shall never increase or decrease by more than one percent (1.0%) from the interest rate which was in effect immediately prior to such change and c) The interest rate payable at any time during the term of the loan shall never be greater than 12.630% or lower than 6.130% per annum. Late charges and default charges as specified below, however, are payable in addition to the per annum rate limitations set forth in this paragraph and nothing contained herein shall be deemed to limit the imposition of such late charges and/or default charges.

The initial monthly installment payments of principal and interest shall be in an amount necessary to amortize the original indebtedness, together with interest at the initial rate, over a Thirty year period (the Amortization Period). Monthly installments of principal and interest, however, shall be changed, effective with the installment due in the month immediately subsequent to the Change Date, to an amount necessary to amortize the principal balance outstanding on such Change Date, together with interest thereon at the new per annum rate of interest over the number of years remaining in the Amortization Period. Interest on this loan shall be payable monthly in arrears, except that per diem interest from the date if disbursement to the end of the calendar month in which disbursement occurs shall be payable in advance.

All words used in this agreement will be construed to be of such gender or entity or number as the circumstances require.

IN WITNESS WHEREOF, Borrower has executed this RIDER.

_____
Petru Pop

Property Address:
5915-5947 W Rose Lane
Glendale, AZ 85304



OFFICIAL RECORDS OF
MARICOPA COUNTY RECORDER
HELEN PURCELL
2006-0515616 04/18/06 11:23 AM
25 OF 31

RE1120

This instrument was prepared by and
After recording return to:
Vanessa A. Orta, Esq.
Anderson, McCoy & Orta, P.C.
100 North Broadway, Suite 2600
Oklahoma City, OK 73102
Telephone: (888) 236-0007

| | |
|---|---|
| Jurisdiction: | Maricopa |
| State: | Arizona |
| Loan No: | 0008704384 |
| AMO File No.: | 1521.418 |
| Property: | 5915-5947 W Rose Lane |

## ASSIGNMENT OF MULTIFAMILY DEED OF TRUST, ASSIGNMENT OF RENTS AND SECURITY AGREEMENT

FOR VALUE RECEIVED, **LASALLE BANK NATIONAL ASSOCIATION**, whose address is 1350 East Touhy Avenue, Suite 280W, Des Plaines, IL 60018, ("Assignor"), conveys, assigns, transfers, and sets over unto **WELLS FARGO BANK, N.A., AS TRUSTEE FOR THE REGISTERED HOLDERS OF LASALLE COMMERCIAL MORTGAGE SECURITIES, INC. 2006-MF2, COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-MF2**, ("Assignee"), whose address is CMBS Department, 1015 10th Avenue, Minneapolis, MN 55414, without recourse, representation or warranty, express or implied, except as set forth in that certain related Mortgage Loan Purchase Agreement, all the right, title and interest of Assignor in and to the Multifamily Deed of Trust, Assignment of Rents and Security Agreement and other documents, if any, described in Schedule A attached hereto and incorporated herein, together with the note or notes described therein, and all other documents and instruments relating to or securing said Multifamily Deed of Trust, Assignment of Rents and Security Agreement or note or notes described therein, encumbering, among other things, the premises described in Exhibit A attached hereto and incorporated herein and the improvements thereon.

TO HAVE AND TO HOLD the same unto Assignee, its successors and assigns forever.

IN WITNESS WHEREOF, the Assignor has duly executed this assignment to be effective as of the 30th day of March 2006.

SCHEDULE A

Multifamily Deed of Trust, Assignment of Rents and Security Agreement dated December 2, 2005, by PETRU POP, to LASALLE BANK NATIONAL ASSOCIATION, and recorded December 5, 2005, as Document Number 20051831575, with the Maricopa County Recorder, Arizona.

LASALLE BANK NATIONAL ASSOCIATION,
a national banking association

By: *Valerie M. Scalise*

    Name: Valerie T. Scalise
    Title:  Vice President

STATE OF ILLINOIS     §
                   §
COUNTY OF COOK     §

    On the 17th day of March 2006, before me, the undersigned, a Notary Public in and for said state, personally appeared Valerie T. Scalise, as Vice President, personally known to me or proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument, and that such individual made such appearance before the undersigned, in the City of Chicago, County of Cook, Illinois.

    WITNESS my hand and official seal.

                                *Janice K. Hopper*

[ S E A L ]                   Janice K. Hopper, Notary

My Commission Expires:     October 17, 2006

"OFFICIAL SEAL"
JANICE K. HOPPER
NOTARY PUBLIC STATE OF ILLINOIS
My Commission Expires 10/17/2006

8704384

**Exhibit "A"**

Legal Description:

THE SOUTH 112.7 FEET OF LOT 8, BLOCK 10, OF ORCHARD ADDITION TO GLENDALE, ACCORDING TO THE PLAT OF RECORD IN THE OFFICE OF THE COUNTY RECORDER OF MARICOPA COUNTY, ARIZONA, RECORDED ON BOOK 3 OF MAPS, PAGE 30. EXCEPT THE EAST 170 FEET

*Property Address: 5915-5947 W Rose Lane, Glendale, AZ 85304*
*P.I.# 144-18-039-4, 144-18-040C 2, 144-18-040D1, 144-18-040E 1, 144-18-040 F 0, 144-18-040G 9*